Filed 12/22/23  P. v. Jacobsen CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C097871 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CF01192) |
| v. | |
| CHASE JOHNNIE JACOBSEN, | |
| Defendant and Appellant. | |

Defendant Chase Johnnie Jacobsen pleaded guilty to gross vehicular manslaughter while intoxicated and the trial court sentenced him to the upper term sentence of 10 years. Defendant now contends the court committed procedural errors when it considered his youth at the time of the offense under Penal Code[1] section 1170, subdivision (b)(6) and had insufficient evidence of aggravating factors to impose an upper term sentence.  The People argue the appeal must be dismissed because defendant did not first obtain a certificate of probable cause.  We conclude no certificate is required and will affirm the judgment.

---

[1] Undesignated statutory citations are to the Penal Code.

1

BACKGROUND

The prosecution charged defendant with gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)), and driving with a 0.08 percent blood-alcohol content causing injury (Veh. Code, § 23153, subd. (b)). The prosecution further alleged defendant fled after committing vehicular manslaughter (Veh. Code, § 20001, subd. (c)) as to the vehicular manslaughter count and caused great bodily injury as to the other counts (§ 12022.7, subd. (a)).

Defendant pleaded guilty to the vehicular manslaughter count and the prosecution dismissed the other counts and allegations in September 2022. As part of the plea agreement, defendant stipulated to the facts as set forth in the probation report. He also stipulated to the use of those facts for sentencing, waiving the right to trial to establish aggravating circumstances and saying he "agree[d] that the judge may find aggravating factors based on the documents described above, and the court may sentence me to the lower, middle, or upper term."

The probation report explained defendant had been celebrating his brother's birthday watching UFC fights with friends. He drank several beers and whisky. His girlfriend texted him, asking if he had been drinking and saying not to drink and drive. Defendant left the party in his truck.

The victim was leaving work around the same time on his moped. Defendant attempted to pass the victim on the road and instead collided with him. The victim's coworker, who was nearby, saw the victim at the side of the road and contacted law enforcement. Officers found several nearby residents who had video footage of defendant's truck fleeing the area with the victim's moped lodged under the truck and sparks or fire coming out. One witness stated defendant was driving around 80 miles per hour.

While defendant was driving, he stopped and tried to dislodge the moped from the truck but was unsuccessful. He put some of the debris from the moped in the bed of the truck and drove until the moped came loose on its own. Officers estimated defendant drove 1.7 miles with the moped lodged under the truck.

The officers spoke with defendant, who smelled of alcohol; had red, watery eyes; and slurred speech. He said he had been driving home from his parents' house when the victim was " 'suddenly' " on the hood of his truck. Defendant failed a series of field sobriety tests and a breathalyzer returned readings of 0.144 and 0.148 percent blood-alcohol content. He said he had drunk three beers. Later on, he admitted he had six beers and whiskey. Defendant admitted he had not stopped to render aid or contact emergency services. Defendant was 24 years old at the time of the crime.

The victim had a fractured skull, brain bleed, lacerated spleen, a neck fracture, and multiple back fractures. He died of his injuries several hours later.

In his statement to the probation officer, defendant admitted he had been feeling a " 'little bit' " intoxicated but did not feel " 'out of sorts' " when he began to drive. He said he looked away from the road and hit " 'something,' " which he believed was a mailbox. He continued to drive but heard something under his truck and stopped. When he saw something wedged under his truck, he realized what happened and panicked. He went home and told his girlfriend, then called his parents and told them. He planned to call the police, but they arrived before he could do so. He expressed remorse and said he hoped to receive probation so he could continue working.

Before the sentencing hearing, the parties submitted briefing. Defendant argued he was remorseful, had no prior criminal record, and was a "youth" under section 1016.7, subdivision (b). Defendant argued that the changes to section 1170, subdivision (b)(6) applied to defendant as a youth and that defendant should receive a low term sentence if the court did not grant probation.

3

At the sentencing hearing, the prosecution requested an upper term sentence. The court found probation inappropriate given the nature, seriousness, and circumstances of the crime compared to other instances of the same crime because defendant made no effort to stop or render aid to the victim. The court observed defendant had stipulated to the facts for aggravating factors and "did take into account that [defendant] is a youth . . . . Because of the existence of that factor, under the law, the Court had to consider the imposition of a lower term." The court found "the lower term would not be in the interest of justice because there are aggravating factors present that warrant the imposition of an upper term."

In particular, the court noted, "the callousness of [defendant's] actions is what weighed heavily for the Court. His actions after striking [the victim] with his truck, showed a complete disregard for human life. [¶] Speeding away from the scene, dragging the Moped under his truck for nearly two miles, making no attempt to render aid or call 911; [defendant] had nearly twice the legal limit of alcohol in his system at a point one four, and his significant other had pleaded for him not to drink and drive and he ignored that. He knew that he had hit a person and he took off anyway. He threw pieces of the Moped into the back of his truck, presumably to conceal his actions. [¶] In mitigation, the Court does acknowledge that he resolved the case at an early stage, had no prior criminal history, and the Court considered his youthfulness." The court imposed the 10-year upper term sentence.

Defendant filed a timely notice of appeal without a certificate of probable cause, saying the appeal was based on grounds that arose after entry of the plea that did not affect the plea's validity.

## DISCUSSION

### I

### *Certificate of Probable Cause*

As an initial matter, the People argue defendant's claim is barred because he did

4

not obtain a certificate of probable cause and the appeal targets "the trial court's authority to impose a sentence within its discretion contemplated by his [plea] agreement." We disagree.

Under section 1237.5, "an appeal may not be taken after a plea of guilty or no contest unless the defendant has filed a statement showing reasonable grounds for appeal and the trial court has executed and filed a certificate of probable cause. This requirement does not apply, however, if the appeal is based upon grounds that arose after entry of the plea and that do not affect the validity of the plea." (*People v. French* (2008) 43 Cal.4th 36, 43.) To determine " 'whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: "the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5.' " (*Id.* at p. 44.)

Here, defendant's argument on appeal is that the trial court committed procedural errors under section 1170, subdivision (b)(6) and thus should not have imposed the upper term sentence because he was a youth offender. Defendant claims the trial court did not begin with a presumption of the lower term and did not make proper or sufficient factual findings to depart from the lower term presumption. The plea agreement contemplated the parties could argue for a lower term sentence than the statutory maximum and the court could impose a sentence using its discretion. Defendant does not argue that the court could *never* impose an upper term sentence; as the People acknowledge, defendant is arguing "the court abused its discretion by failing to correctly apply the recent amendments to the aforementioned sections by failing to start with the lower presumptive term due to his youth." Thus, the challenge is to " 'the exercise of individualized sentencing discretion' " based on a plea agreement that " 'contemplate[d] that the court [would] choose from among a range of permissible sentences,' " and "does 'not

5

constitute an attack on the validity of the plea, for which a certificate is necessary.' " (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 199.) We thus have jurisdiction to consider the substance of defendant's appeal.

II

*Rejection of the Lower Term*

Defendant's primary argument is that the trial court misapplied section 1170, subdivision (b)(6) because it did not presume a lower term sentence and did not find adequate aggravating circumstances to justify the upper term sentence. We see no error in the trial court's analysis.

Effective January 1, 2022, section 1170, subdivision (b) makes the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) As relevant here, section 1170, subdivision (b)(6) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense."

Section 1016.7, subdivision (b) defines " 'youth' " as "any person under 26 years of age on the date the offense was committed." The " 'interests of justice' " can include "the defendant's background and prospects . . . ; the nature and circumstances of the crime and the defendant's level of involvement; the factors in aggravation and mitigation including the specific factors in mitigation of . . . section 1170[, subdivision ](b)(6); and the factors that would motivate a 'reasonable judge' in the exercise of their discretion." (Advisory Com. com., Cal. Rules of Court, rule 4.420.)

The changes to section 1170, subdivision (b) thus "create a presumption in favor of the lower term sentence" for youth offenders. (*People v. Hilburn, supra*, 93

6

Cal.App.5th at p. 203.) Trial courts may still impose a greater sentence, however, "if the court determines that the aggravating and mitigating factors show that imposition of the lower term would be contrary to the interest of justice." (*Ibid.*) "After a sufficient factual basis to support the circumstances in aggravation or mitigation is found, the court enjoys broad discretion in its sentencing determination. The trial court's sentencing decision is 'review[ed] for abuse of discretion.' [Citation.] That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest." ' " (*Id.* at pp. 205-206.)

Here, the trial court recognized defendant qualified as a "youth" under section 1016.7, subdivision (b), and implicitly concluded defendant's youth was a contributing factor to the offense. After reviewing the facts to which defendant had stipulated, the court found a lower term sentence would be contrary to the interests of justice. The court explained it relied on defendant's behavior after the crime to come to this conclusion, noting he sped away from the scene with the victim's moped stuck under his truck for nearly two miles, made no effort to give aid or call 911, had a blood-alcohol level almost twice the legal limit, and had been warned not to drink and drive. Defendant also knew he had hit a person and placed pieces of the moped in his truck, which the court interpreted as an effort to hide evidence. The court acknowledged there were mitigating factors, including defendant's age, lack of a criminal record, and the early resolution of the case. On balance, however, the court found an upper term sentence appropriate, saying these facts indicated defendant's callousness.

Each fact the court noted was part of the "nature and circumstances of the crime," which are permissible to consider when examining whether the lower term is in the interests of justice. (Advisory Com. com., Cal. Rules of Court, rule 4.420.) Defendant's failure to render aid, even knowing that he had struck a human being, was indicative of callousness in the commission of the crime. (Cal. Rules of Court, rule 4.421(a)(1).) The

7

extent of defendant's intoxication, his girlfriend's warning not to drink and drive, his flight from the scene dragging a moped, and his apparent attempt to clean up the moped debris are also reasonably related to the circumstances of the crime and were permissible to consider. (Cal. Rules of Court, rule 4.421(c).) Defendant stipulated to the use of these facts in sentencing as part of his plea agreement, and the court was free to consider them under the newly amended section 1170, subdivision (b).

Defendant argues the court did not apply a presumption in favor of the lower term because it said "it only had to 'consider' imposition of the lower term," implying it had "unfettered discretion to make a choice," rather than starting with the lower term presumption. The record does not support defendant's argument. Although the trial court did use the word "consider," the court made clear it "had to consider the imposition of the lower term," implying a mandatory obligation. Moreover, the court explicitly used the framework of section 1170, subdivision (b)(6) to guide its analysis: it first stated it was required to consider the lower term, but then weighed the aggravating factors against the mitigating factors considering the interests of justice. Were the court merely considering the lower term as one option among many, as it may have done before the January 1, 2022, changes to section 1170, there would be no reason for it to structure the sentencing analysis in the way that it did. For similar reasons, we reject defendant's argument that the court misunderstood the phrase "contrary to the interests of justice" and failed to make "a finding that imposition of the low term would be contrary to the interests of justice." Even if the choice of the word "consider" did not match up with the language of the statute, we see no error in the substance of the trial court's reasoning.

Defendant also takes issue with the trial court's finding that the upper term was warranted, asserting the trial court could only use defendant's callousness as a factor to impose the midterm sentence and was required to use a separate, additional factor to impose the upper term sentence. Defendant explains that, because section 1170, subdivision (b)(2) includes a separate requirement to impose more than a midterm

8

sentence, a trial court must "zero out" the scale after meeting the subdivision (b)(6) requirements, and then find different aggravating facts to justify the subdivision (b)(2) requirements.

None of the authorities defendant cites support this reading of the statute. Rule 4.425 of the California Rules of Court, for example, prohibits the dual use of facts for imposing the upper term and running sentences consecutively, and *People v. McFearson* (2008) 168 Cal.App.4th 388, 395 concludes a prior conviction cannot be used to impose the upper term while the prison term served because of that conviction is used as a sentence enhancement. Neither stands for the proposition that a court must make multiple factual findings with different facts for each sentencing step above the lower term. Nor do they establish an absolute rule "that an aggravating fact cannot be used twice" in sentencing, as defendant suggests. Trial courts may, for instance, use the same aggravating fact to impose upper term sentences on multiple counts or "on a single offense and on its accompanying, consecutive enhancement." (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1198; see also *People v. Chism* (2014) 58 Cal.4th 1266, 1336; *People v. Price* (1984) 151 Cal.App.3d 803, 812.)

And, in any case, the trial court cited to multiple facts supporting its decision to impose the upper term sentence. As noted above, the facts fell within more than one aggravating circumstance category listed in the California Rules of Court, even though the court referred to them all as indications of defendant's "callousness." Thus, even if defendant's reading of the statute is correct, the trial court's reasoning was sufficient because the court was not relying on a single fact for multiple purposes. This also resolves defendant's constitutional concerns, which are premised on the argument the trial court used facts to elevate the term from the lower term to the midterm, and then used the same facts to elevate the term again to the upper term. The trial court used multiple facts in its analysis, all of which were stipulated to by defendant, and we reject the assertion defendant's constitutional rights were violated.

9

We conclude the trial court did not err when it applied section 1170, subdivision (b)(6).

### III

*Insufficient Evidence*

Defendant argues there was insufficient evidence to sentence him to the upper term because the facts the trial court interpreted as callous behavior were simply indications of youthful behavior. We see no merit in defendant's claim.

We review the trial court's findings concerning aggravating and mitigating factors for the presence of substantial evidence (*People v. Gragg* (1989) 216 Cal.App.3d 32, 46), and the trial court's balancing of aggravating and mitigating factors for abuse of discretion (*People v. Hetherington* (1984) 154 Cal.App.3d 1132, 1140-1141). A trial court must exercise its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) It is an abuse of discretion if the trial court "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid*.) " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) " '[A] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*Id.* at p. 978.)

As noted above, defendant stipulated to the facts in the probation report and agreed the trial court could use those facts to sentence him to the lower, middle, or upper term. Many facts supported the upper term, including defendant's failure to stop, render aid, or contact emergency services, his high-speed flight from the scene while dragging the moped, his elevated blood-alcohol level, and his attempt to hide evidence. All these

10

facts fell within the aggravating circumstances permitted under rule 4.421 of the California Rules of Court, and the court specifically identified defendant's callousness as a significant aggravating circumstance. The court weighed the mitigating circumstances and concluded an upper term sentence was warranted.

Defendant relies on cases interpreting the phrase "reckless indifference to human life" in the murder context to argue that defendant's youth should have been considered before determining that he acted callously. The trial court did, however, consider defendant's youth at the time of sentencing, and it was within the court's discretion to weigh defendant's youth against the aggravating facts of the case.

We also find unpersuasive defendant's reliance on a different series of cases interpreting the phrase "reckless indifference to human life" for the proposition that ambiguity in defendant's actions after the crime make it difficult to assess his mental state. It is true that a multitude of factors may have motivated defendant's conduct, but it was within the trial court's prerogative to weigh those factors. Defendant's youth and other possible explanations for his conduct after the crime were presented to the trial court in defendant's statement in the probation report and in defendant's presentencing briefing. We see no indication the court disregarded these items. The court's reasoning was neither irrational nor arbitrary, and there is substantial evidence to support its conclusions.

DISPOSITION

The judgment is affirmed.

                                              /s/
                                            WISEMAN, J.[*]

We concur:

 /s/
MAURO, Acting P. J.

 /s/
RENNER, J.

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12